## UNION TRACTION COMPANY OF INDIANA *v.* McCULLOUGH.

[No. 12,447. Filed November 24, 1926. Rehearing denied January 26, 1927. Transfer denied February 1, 1928.]

*J. A. Van Osdol, Ralph K. Kane, Gideon W. Blain,* and *Robert Hollowell, Jr.,* for appellant.

*Gentry, Cloe & Campbell* and *Ryan & Devol,* for appellee.

NICHOLS, J.—Action by appellee to recover damages for alleged injuries to himself received while he was working in the employment of appellant as a laborer at its power house at Anderson, Indiana.

The original complaint was in two paragraphs, but the cause was eventually tried upon the first paragraph, to which there was an answer in general denial. A trial by jury resulted in a verdict of $17,500 in favor of appellee, on which, after appellant's motion for a new trial was overruled, judgment was rendered. The error assigned is the action of the court in overruling appellant's motion for a new trial.

It is averred in the complaint that on February 24,

1923, appellant owned and operated an electric railway line through Hamilton and Madison counties, Indiana, and divers other counties of the state. At said time, appellant owned and operated a power house for the purpose of generating electric current used as motive power in the operation of its cars. Said power house was located in the city of Anderson. In the generation of the electric current, appellant owned and operated large steam turbines, the steam being generated by large boilers heated by coal fire and large quantities of coal were used. On said date, and prior thereto, appellee was employed by appellant about the power plant as a common laborer, and was at the time engaged, with other workmen, in unloading coal from cars, under the direction of a foreman who had authority to give orders and directions to appellee in regard to this work. About 5 o'clock p. m. of said day, said foreman ordered appellee, with other workmen, to cease the work they were engaged in, and proceed to the ash pits in said power plant, and with shovels draw the ashes, refuse and cinders from such ash pits. The ash pits were on a floor beneath the grates and furnaces and were constructed of concrete. There were openings from the furnace or grates into the ash pits, so that the cinders and refuse therefrom could be dumped into the ash pits, and the equipment for that purpose was operated by a lever on the upper floor so that the operator could dump the cinders and refuse without leaving the upper floor. From time to time, there were dumped into said ash pits large quantities of hot cinders, ashes, fire, flame and gases, and it became necessary to remove the same from the ash pits from time to time by opening doors into such ash pits and shoveling the said waste therefrom. These ash pits were the ones from which appellee and other workmen were directed to draw the ashes, refuse and cinders as aforesaid. It was the duty of

appellant to its employees, when about to dump said waste into said ash pits, to warn employees of appellant working in said ash pits of the danger which would ensue from such dumping, and to give them reasonable time to put themselves into a place of safety. The exercise of ordinary care required that appellant should have installed some device or means which would warn employees working in or about the ash pits that appellant was about to dump the fire, ashes and refuse into said ash pits. Efficient signal systems were then in general use in like establishments, and would not in any way have interfered with the efficient operation of said plant. When such ashes, fire, gases and other material were so dropped into the ash pits when the doors were open, it caused gases and flames and fire to issue forth from said doors in large quantities, so as seriously to injure and probably kill persons engaged in drawing said waste from said pits through the doors. Said place of work so furnished was dangerous because appellant had negligently and carelessly wholly failed to install a system by which warning could be given of the intention to dump the waste from the furnaces aforesaid. Appellee entered the ash pits, and opening the doors thereof, was removing the ashes and other materials from the ash pits with a shovel, and, while so doing, appellant's employee in charge of the lever and dumping equipment, without any warning or notice to appellee, and without ascertaining whether any one was in dangerous proximity to said ash pits, or whether the doors thereof were closed, and without any means of warning appellee of the danger arising therefrom, negligently pulled the lever to dump the ashes and other materials from the grates, thereby dumping a large quantity of flame, fire and ashes into the ash pits, and on to appellee, thereby firing his clothing, and burning the same from his body, burning his head, arms, body and hands to such an ex-

tent that the skin and flesh on the neck, face, head, arms and hands were burned and his fingernails and flesh were cooked and later rotted off.

There are averments as to his permanent injuries which we do not need to set out. It is further averred that appellant, more than thirty days before appellee's injuries as herein set out, filed with the Industrial Board of Indiana notice of its election to reject the provision of the Indiana Workman's Compensation Act, and that notices were posted in conspicuous places in said power house in which appellee was employed as required by statute.

There was a demand of $50,000 damages.

Appellant's assertion that there was no evidence that appellant had, thirty days before the accident, rejected the Workmen's Compensation Act by notice in due form to the Industrial Board was fully met by an answer to a writ of certiorari issued at the instance of appellee, by which it appears that appellant had rejected the act and given proper notice thereof. There was ample evidence, in the absence of any evidence to the contrary, that proper notices of such rejection were duly posted in conspicuous places in the power plant. We need, therefore, to give no attention to questions of appellee's contributory negligence, or assumption of risk, as appellant may not make these defenses. Acts 1915 p. 392. *Ayrshire Coal Co.* v. *West* (1919), 72 Ind. App. 699, 125 N. E. 84. The negligence of appellant as averred in the complaint is sustained by ample evidence, and we do not see that anything can be gained by setting it out. Appellant contends that there was no statute or ordinance requiring the installation of equipment for warning that the ashes, fire, cinders, etc., were to be dumped into the ash pit, and that such duty therefore rested upon the common-law duty to use ordinary care to furnish a safely equipped place to work,

contending that §3862d Burns 1914, §4443 Burns 1926, is merely declaratory of the common law. The section provides that, "It is hereby made the duty of all owners . . . engaged in the care, operation, or management . . . of any building . . . shop, factory or business . . . to see and to require . . . that all dangerous machinery, mechanism, contrivances . . . are securely fenced, guarded, covered or otherwise protected with safety arrangements and appliances to the fullest extent possible, that the operation of such machinery . . . shall permit, . . . and that all hoists, machinery and mechanism operated other than by hand power, are, when necessary for the safety of the persons employed in and about the same, . . . *provided with a system of communication or otherwise so that at all times there may be prompt and efficient communications between employees and other persons and the operator of the motive power.*" (Our italics.)

It is to be observed that the ashes, cinders and other waste were dumped from the grates under the boilers here involved by steam. Conceding that the part of the statute here involved is but a restatement of the common law, a system of communication was required when reasonably necessary for the safety of the employee, and a failure to install such a system under such circumstances was negligence. The jury has found by its verdict that such a system of communication was reasonably necessary. The purpose of this statute was well stated in *Ayrshire Coal Co.* v. *Wilder, Admr.* (1920), 75 Ind. App. 137, 129 N. E. 260, where it was held that it was the duty of the employer to use every device practicable and possible to use for the protection of life, limb and health, limited only by the necessity for preserving the reasonable efficiency of the plant.

We might agree with appellant's contention that the

damages are excessive if the only element to be considered in assessing such damages was the loss of ██ wages to appellee by reason of the injuries which he sustained, though it is apparent that appellant is in error in its computation as to the prospective earnings of appellee during the period of his expectancy. But the excruciating pain suffered by appellee, and the fact that his hands were burned so that they were almost useless, and that his face and neck were scarred and disfigured because of his burns so as to make his appearance repulsive, are all elements to be considered along with the impairment of his earning capacity. Considering all of these elements, we cannot say that the damages assessed by the jury are excessive.

We have examined each of the instructions given by the court as well as each of those tendered by appellant and refused and we hold that the jury was well instructed as to the law of the case and that there was no error in giving instructions and that there was no error in refusing to give any of those tendered by appellant.

We find no reversible error in the record. The judgment is therefore affirmed.