GERLOT ET AL. *v.* SWARTZ ET AL.

[No. 26,761.  Filed April 28, 1937.  Rehearing denied June 23, 1937.]

*Bomberger, Peters & Morthland,* and *Alfred H. Highland,* for appellants.

*Howard D. Clark, Bruce B. Loring,* and *Loring & Douglas,* for appellees.

ROLL, J.—This was an action by appellee Douglas A. Swartz against appellants to recover damages for personal injuries, resulting from a rear end automobile collision. The complaint was in three paragraphs. Appellants' demurrer to the first paragraph of amended complaint was overruled and appellants answered by general denial. There was a trial by a jury and a verdict returned in favor of appellee Swartz. Appellants filed a motion for a new trial which was overruled.

Appellee's first paragraph of amended complaint, in substance, alleges that shortly after midnight on the 9th day of January, 1934, plaintiff was riding as a gratuitous passenger in a car owned and operated by Werner Hiltpold, in an easterly direction on Indiana State Road No. 130 about three-quarters of a mile west of the town limits of Wheeler, Porter County, Indiana; that the highway runs in a northwesterly and southeasterly direction, and for more than a mile in each direction from the point of the accident is improved with a cement slab twenty (20) feet in width, with a five-foot berme, eighteen (18) inches of which immediately adjoining the concrete is improved with gravel; that at the time there was and had been falling a drizzly rain, the atmosphere was filled with mist, and it was very dark; that some time prior to the accident the defendant, Walter Gerlot, had driven a truck, called a semi-trailer, loaded with freight, along said highway, and was proceeding toward the Town of Wheeler. Shortly before the accident occurred he parked the truck on the right side of the highway and to the south of the center line, entirely upon the concrete portion of the road. The body of the truck was seven or eight feet in width, twelve feet in height, and was painted a dark color.

That at all times mentioned in the complaint the defendant, Walter Gerlot, was acting as the driver and agent of the defendant Kain's Motor Service, Inc., and

Anthony Kain; that Kain's Motor Service, Inc., was at all times mentioned in the complaint the owner and operator of the truck; that it is a corporation organized under the laws of Illinois.

That at all times mentioned in the complaint the truck was under the control and charge of Gerlot; that Kain's Motor Service, Inc. was on said date a motor or contract carrier for hire and there was being transported in said truck, for compensation, express and freight, and it was being operated between Chicago, Illinois, and Fort Wayne, Indiana; that at the time and place aforesaid the defendants carelessly and negligently permitted the truck to remain parked, and carelessly and negligently failed to cause to be displayed, in a permanent position above the surface of the highway, at a distance of approximately three hundred feet to the northwest and to the southeast of where the truck was parked, a brilliant burning danger or caution signal, and a red warning flag.

That at said time and place plaintiff was riding as a gratuitous passenger with Hiltpold. The car was being driven at a speed approximately thirty miles per hour, and because of the negligent acts alleged, the driver of said car came upon said truck parked in the highway; that he did not know the truck was parked by reason of the negligent acts alleged, and that he was unable to turn his car either to the right or to the left, or to stop the same in time to avoid running into the rear of the truck, and did run into the rear of the truck with great force and violence in such a manner that the plaintiff riding in the front seat to the right of the driver was thrown through the windshield and sustained enumerated injuries, to wit: severely bruised on all parts of his body; great nervous shock; fracture of the skull over the left eye; pressure on the eyeball; impaired sight of left eye; cut on left eyelid, another along the

arch of the left eyebrow; numbness in life side of head; roughened bone above the left eye; eye fatigue and constant headaches; cut on the chin filled with broken glass; deep and lasting scars on head, face and throat; right knee cap torn loose and pushed up along the femur, resulting in a necessary operation, stiff and swollen, and motion reduced to one-half; constant pain in right leg. He will be handicapped in performing his duties as a chemist; salary $6.58 per day; confined to his bed for a period of five weeks; unable to work for eight weeks; employed doctors and nurses; confined in the hospital; $300.00 doctor bill; $250.00 hospital and nurses. Prior to the accident was able bodied, thirty-seven years of age.

The second paragraph is identical with the first except that instead of charging negligence and failure to place flares and lights, the negligence charged was in allowing the truck to remain parked without any lights on the rear end thereof, and without warning or notice in any manner to persons driving automobiles approaching said truck so parked from the west; that said truck was parked on said highway in the manner aforesaid.

The third paragraph of complaint is identical with the first and second except the allegations of negligence, which are that the truck was parked on the highway on the concrete slab thereof, immediately to the south of the center line which was designated by a black line down the center of the highway, and carelessly and negligently permitted the same to remain parked on said highway without a lighted red light on the rear of said truck.

Appellants' demurrer to the first paragraph of complaint was on the ground that said first paragraph of complaint does not state facts sufficient to constitute a cause of action, attaching thereto the following memorandum:

"For a memorandum in support of their separate and several demurrer, the defendants separately and severally say that at the time of the injury complained of by the plaintiff, they were not, nor were either of them under any duty to display a brilliant burning danger or caution signal, and a red warning flag at a distance of approximately three hundred feet to the northwest and to the southeast of where the truck was alleged to be parked; that the statute of the State of Indiana which purports to require the placing of flares to the front and rear of motor trucks stopped on the highway is invalid and unconstitutional."

The overruling of appellants' demurrer to the first paragraph of appellee's amended complaint is the subject of appellants' first point discussed in their brief. They assert that §47-526 Burns Ind. St. 1933, §11179 Baldwin's 1934, Acts 1933, Ch. 90, p. 653, is unconstitutional and void, being in violation of §23, Art. 1, of the Constitution of Indiana and of the 14th Amendment to the Constitution of the United States. The above statute is the so-called flare statute, and applies only to motor vehicles used for the carriage of passengers for hire, motor trucks and commercial motor vehicles, and excludes pleasure vehicles. For this reason appellants claim the classification is arbitrary, unreasonable and capricious and therefore invalid. Appellant points out that the object and purpose of the statute is to warn travelers of the danger and hazard necessarily connected with vehicles stopped on the highway, and argues that the duty is imposed according to the character of the use of the vehicle and not according to the characteristics common to all motor vehicles, in that they all have size and weight which would make any or all of them a dangerous obstruction if parked unlighted on a highway.

A like contention was made in the case of *Koplovitz* v. *Jensen* (1925), 197 Ind. 475, 151 N. E. 390, and the

court held adversely to appellants contention. We quote the following from that opinion:

"It is an elementary rule that every presumption will be indulged in favor of the validity of legislative action. The power of the legislature of this state to pass and promulgate reasonable police regulations had never been denied. It may exercise the police power when necessary and appropriate to promote the health, comfort, safety and welfare of society, even though such enactments may invade the right of liberty or property of an individual. *Bailey* v. *People* (1901), 190 Ill. 28, 60 N. E. 98, 83 Am. St. 116, 54 L. R. A. 838. The act here in question was designed to secure the safety of travelers upon the public highway. It is public in purpose and applies alike to all persons similarly situated, and is of general application to all members of the same class. The incorporation of these elements into a law resting upon public policy is not subject to the claim of class legislation, that is to say, discrimination against some and favoring others, and is sufficient denial of the claim that it is founded upon an unreasonable basis.

"In *Minneapolis, etc., R. Co.* v. *Beckwith* (1888), 129 U. S. 26, 9 Sup. Ct. 207, 32 L. Ed. 585, in speaking of §1 of the Fourteenth Amendment, it was said:

'The discriminations, which are open to objection, . . . are those where persons engaged in the same business are subjected to different restrictions, or are held entitled to different privileges under the same conditions. It is only then that the discrimination can be said to impair that equal right which all can claim in the enforcement of the law.'

See also, *Barbier* . *Connolly* (1884), 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 823; Cooley, Constitutional Limitations (6th ed.) pp. 479, 481.

If it were within the province of courts to determine the wisdom, policy, or expediency of legislation, then the farm wagon suggestion of appellant would be quite persuasive of his views. But, inasmuch as the necessity for such legislation is a matter entirely for the legislature, the question of whether or not it acted wisely in adopting a classi-

fication is a matter of no concern to the courts unless it appears that such classification is not founded on substantial distinctions with reference to the subject matter, or is so manifestly unjust and unreasonable as to destroy the lawful use of property. *Bedford Quarrier Co.* v. *Bough* (1907), 168 Ind. 671, 80 N. E. 529, 14 L. R. A. (N. S.) 418; *State* v. *Wiggam* (1918), 187 Ind. 159, 118 N. E. 684; *City of Des Moines* v. *Keller* (1902), 116 Iowa 648, 88 N. W. 827, 93 Am. St. 268, 57 L. R. A. 243; *State* v. *Yopp* (1886), 97 N. C. 477, 2 S. E. 458, 2 Am. St. 305; Bierly, Police Power, pp. 68, 70.

"We therefore conclude that the action of the legislature, in selecting motor vehicles and in subjecting them as a class to certain regulations while being operated or driven upon the public highways of this state, was obviously lawful and a proper regulation of the use of property (Black, Constitutional Law (3d ed.) p. 433), and consequently not forbidden by the due process of law, equal protection of laws, or the privilege or immunity clauses of Art. 14, §1 of the Federal Constitution; nor was the legislature inhibited by the equal privilege and immunity section of our Bill of Rights. Art. 1, §23, state Constitution. Nor is the act in question local or special as applied to punishment of crimes, but it is of uniform operation throughout the state upon the subject matter therein, and applicable alike to all persons within the class, and hence not inhibited by Art. 4, §§22 and 23 of the Constitution of Indiana."

Upon authority of the above case and cases therein cited we conclude the statute here in question is not subject to the constitutional objection urged against it.

Appellants second point is that the court erred in overruling their motion for a new trial for the reason that the verdict is contrary to law; first, because there is no valid law to support the theory of negligence alleged in the first paragraph of complaint, and second, because the proximate cause of appellee's injuries was the negligence of the driver of the car in which appellee was riding.

Since we hold that the "flare statute" is valid, it follows that appellee's first paragraph of complaint is sufficient as against this objection; and as to the second point, this presented a question for the jury. The evidence was conflicting, and under such conditions this court will not weigh the evidence, since there was sufficient evidence to support the verdict.

Having concluded that §47-526, Burns Ind. St. 1933, Acts 1933, Ch. 90, p. 653 (the so-called flare statute) is constitutional, each paragraph of complaint stated a cause of action, and the general verdict will stand, if the evidence is sufficient on either paragraph of complaint. *Ross* v. *Thompson* (1881), 78 Ind. 90; *Ayrshire Coal Co.* v. *West* (1919), 72 Ind. App. 699, 125 N. E. 84. In the third paragraph of complaint the negligence was the absence of a red tail light on the rear of the car. This charge of negligence was supported by the evidence of appellee and Werner Hiltpold, the driver of the car in which appellee was riding. Lee Winslow and Hazel Winslow arrived at the scene of the accident shortly after it happened and both testified that while they remembered seeing the head light on the truck, they did not remember seeing the tail lights on the truck. Francis Miller, the driver of the truck testified that the tail light was on when the collision occurred. There is a conflict in the evidence on this alleged negligence, and the jury by its verdict determined that issue in favor of appellee and we cannot disturb its finding under such conditions.

Appellant says that instruction No. 3, given to the jury was erroneous. This instruction is as follows:

"The burden is on the plaintiff to prove by a fair preponderance of the evidence, that the defendants, or one of them, was negligent as charged in one or more of the paragraphs of complaint.

"The first and third paragraphs of complaint each charges the violation of a statute of the State of Indiana. Ordinarily the violation of a statute constitutes negligence.

"There has been evidence introduced on behalf of the plaintiff tending to show that defendant's truck was parked on a public highway, outside of a city or town without a warning signal being placed approximately 300 feet behind said truck, and without a tail light burning.

"The burden of proving the acts of negligence alleged in the complaint is upon the plaintiff. If the plaintiff has proven, by a fair preponderance of the evidence, that the operator of said truck failed to place a warning signal approximately 300 feet behind said truck, then the duty devolves upon the defendants to show some lawful reason or excuse for such failure to so place such warning signal, and if you find from the evidence that the defendant, Walter Gerlot, could not have so placed said warning signals in time to have warned the plaintiff, and that immediately before the collision in question the red tail light on said truck was actually lighted, then the plaintiff could not recover on said first or third paragraphs of his complaint."

Appellants object to the above instruction because, they say, it places upon them the burden of proving that the tail light on the truck was actually lighted. We do not think the instruction is subject to such a construction. The instruction tells the jury that if the plaintiff has proven that the operator of the truck failed to place flares as required by statute, then the duty devolved upon defendant to show some lawful excuse for such failure. Then the instruction tells the jury that if they find from the evidence that the defendant Walter Gerlot could not have so placed said flares in time to have warned the plaintiff and if they further find from the evidence that immediately before the collision in question the red tail light on said truck was actually lighted, then the plaintiff could not recover. If the jury found as a fact that the red tail light on the truck was actually

burning the instant before the collision, it could not have found for plaintiff on its third paragraph of complaint. But the general verdict of the jury was a finding in favor of plaintiff on that issue. Appellant says that said instruction is erroneous because it in effect charges the jury that unless the tail light was actually lighted appellant cannot be excused for their failure to place flares. The instruction is not subject to this construction. While §47-526, Burns Ind. St. 1933, is mandatory, and places a positive duty upon the operator of all motor vehicles coming within its provisions to place flares as therein stated, yet it is clear the statute also contemplates that the operator shall be given a reasonable time to comply with its provisions. But §47-504 Burns St. 1933, Acts 1925, Ch. 213, §28, p. 570, fixes a standard of duty upon operators of motor vehicles as to tail lights and a violation of this statute is negligence per se. The rule was stated in the case of *Prest-O-Lite Co.* v. *Skeel* (1914), 182 Ind. 593, pp. 600, 601, 106 N. E. 365:

> "It must be regarded as well settled doctrine, (1) that if one upon whom the statute imposes a duty, violates that duty, *and the violation results in an injury,* he is liable, irrespective of all questions of care and prudence; . . ."

A well recognized author on automobile law says:

> "By the great weight of authority, the violation of a statute or ordinance is considered negligence *per se.*"

See Cyclopedia of Automobile Law, Huddy, ninth edition Vol. 3-4, p. 62 and cases there cited.

When evidence of negligence is only *prima facie* it is subject to rebuttal, but when there is negligence *per se,* it is conclusive on that question. *Whaley* v. *Ostendorff* (1911), 90 S. C. 281. We conclude instruction No. 3 is not subject to the objections pointed out by appellants.

Appellants question instruction No. 2, because this instruction told the jury that it was for them to determine, *under all the evidence,* whether Gerlot parked the truck in violation of the tail light statute. They say that an instruction is erroneous when its scope is not limited to evidence relevant thereto, where there is evidence on more than one issue. In support of this proposition they cite *Monongahela, etc., River Co.* v. *Hardsaw* (1907), 169 Ind. 147, 81 N. E. 492, and other cases. Language is found in the above case which apparently supports appellants' contention. In the above case the court decided the case on the authority found in the *City of Delphi* v. *Lowery, Admx.* (1881), 74 Ind. 520. In the Delphi case the instruction criticized was on the question of damages, and the court charged the jury that the damage should be determined from "all the facts." It was held that this was erroneous, but the court pointed out that erroneous evidence was admitted in evidence which would form an incorrect basis for the assessment of damages. The real error was the admission of the incompetent and irrelevant evidence, and the language of the instruction had the effect of carrying this error forward. If the evidence in the case is competent, and we must assume that it was unless the contrary is made to appear, we can see no serious objection to the language used in instruction No. 2. In this instruction the court quoted a part of §47-504 Burns 1933, §11154 Baldwin's 1934 (the tail light statute), and then said:

> "The operating of an automobile or a truck or any motor vehicle upon a public highway in the State of Indiana in violation of this statute constitutes negligence by itself but it is a question for the jury, under all the evidence, to determine whether or not the defendant, Walter Gerlot, did park or leave the truck operated by him in violation of said statute."

We must assume the jurors men of ordinary intelligence and that they will give instructions a common sense interpretation. It would not be reasonable to assume that, the jurors under this instruction would, in the determination of the question of negligence, consider any fact or circumstance that had no connection with or bearing upon that issue. They would understand by this instruction that they should consider such facts and such circumstances that bore upon that question. There seems to have been no evidence admitted that was incompetent for them to consider, or that would form a wrong basis from which to consider this question. Incompetent evidence before the jury seems to be the only sound basis for the rule, and where the reason for the rule fails, the rule itself fails. We find no reversible error in the giving of this instruction.

Appellants say that the verdict is excessive. We see no merit in this contention. There is nothing in the record that would suggest that the jurors acted from or were in any way prejudiced in the assessment of damages, but on the contrary the verdict is abundantly supported by the evidence on this point.

Appellants next contend under their motion for a new trial that the court erred in overruling the objection of the defendants to the question put to juror Drollinger on *voir dire* examination by plaintiff's attorney, to wit:

"I will ask you to state whether you own any stock, or are connected in any manner with the Central Casualty and Surety Company of Kansas City, Missouri."

In the examination of this juror on his *voir dire* examination or at any time during the trial of the cause, appellee did not make any statement that appellants carried any indemnity insurance, nor offer any evi-

dence to that effect. It does not appear by the record that appellants carried any indemnity insurance, in any amount, and the only mention of such insurance is found in the examination of the juror Drollinger on his *voir dire* examination, for the purpose, we must assume, of determining as to his qualifications to sit as an impartial juror. As was said in the case of *Beyer* v. *Safron* (1926), 84 Ind. App. 512, 514, 151 N. E. 620:

> "... litigants are entitled to a trial by a thoroughly impartial jury, and, to that end, have a right to make such preliminary inquiries of the jurors as may seem reasonably necessary to show them to be impartial and disinterested. It is a matter of common knowledge that there are numerous companies engaged in such insurance, and that many of the citizens of the state are stockholders in one or more of them. Such citizens may be called as jurors and if, at such time, they are such stockholders, or otherwise interested in any such companies, their pecuniary interest might disqualify them to sit as jurors."

See also, *O'Connor & Co.* v. *Gillaspy* (1908), 170 Ind. 428, 83 N. E. 738; *Goff* v. *Kokomo Brass Works* (1909), 43 Ind. App. 642, 88 N. E. 312; *Ft. Wayne Checker Cab Co.* v. *Davis* (1929), 90 Ind. App. 30, 165 N. E. 764.

In the instant case, appellee's attorneys confined themselves exclusively to questioning the juror as to his relation with any such companies. We hold that the trial court committed no reversible error in overruling appellants' objection.

Appellants' next contention under their motion for a new trial is that the jury was guilty of misconduct in arriving at their verdict by change or quotient. In support of this contention appellants filed two affidavits and some exhibits. Appellee filed a counter-affidavit denying the charge contained in the motion for a new trial.

The trial court passed on this controverted question

in favor of appellee. This court will not question the ruling of the trial court on this controverted question of fact. *Messenger* v. *State* (1899), 152 Ind. 227, 52 N. E. 147; *Stauffer et al.* v. *Martin et al.* (1909), 43 Ind. App. 675, 88 N. E. 363. In *Messenger* v. *State, supra,* the court said (p. 230):

"The evidence presented upon the question of the alleged misconduct, as we have said, was conflicting, and its weight and force, therefore, became a matter to be determined solely by the trial court. The latter, under the circumstances, had better opportunities and means of testing the credibility of the statements made by the several affiants, and thereby ascertaining the truth in regard to the matter under investigation, than we have; and, by overruling the motion for a new trial, the court in effect decided the issue raised adversely to the contention of appellant, and, there being evidence which fully sustains its decision upon that issue, we, in obedience to the well settled rule of appellate procedure, must abide by its ruling."

We find no reversible error in the record. Judgment affirmed.