HELTON ET AL. v. MANN.

[No. 16,756. Filed March 24, 1942. Rehearing denied April 15, 1942. Transfer denied May 15, 1942.]

488

*Jack Kammins* and *Claycombe & Stump,* all of Indianapolis, for appellants.

*Richard Smith* and *Seth S. Ward,* both of Indianapolis, for appellee.

DeVoss, C. J.—This is an action by appellee (plaintiff below), to recover from appellants for personal injuries alleged to have been sustained as a result of an automobile accident caused by the negligence of Charles Helton while operating an automobile as the agent of Rolla R. Helton.

The complaint alleges that on the first day of November, 1936, at about 2:00 p. m., plaintiff was an invited

guest and was in an automobile driven by her father on Orange street in the City of Indianapolis, Indiana, and that while said car was being driven across the intersection of Orange street and Olive street, and while in said intersection, Charles Helton, acting as agent of Rolla R. Helton, negligently operated an automobile and ran the same into said intersection and against the automobile in which plaintiff was riding. It is further alleged that the negligent, careless and unlawful acts on the part of both defendants consisted of:

(1). Negligently failing to keep a proper and sufficient lookout for this plaintiff.

(2). Negligently failing to sound a horn or signal of their approach.

(3). Negligently operating said automobile at a high rate of speed.

(4). Negligently failing to stop said automobile when they saw that a collision was imminent.

(5). Negligently failing to have said automobile under control.

It is further alleged that by reason of the negligence and unlawful act on the part of both defendants, the automobile which they were operating, crashed violently into the automobile in which plaintiff was an occupant, and caused plaintiff to be hurled violently against the interior parts of said automobile from which she suffered injuries. It is further alleged that her face was cut and bruised, her front teeth loosened, her right shoulder injured and that she suffered a severe shock to her entire nervous system and that she has been permanently disfigured and injured.

The cause was submitted to a jury for trial and resulted in a verdict for appellee in the sum of $3,400.00

against appellants and judgment was rendered on the verdict.

The error relied upon for reversal in this court is the overruling of appellants' motion for a new trial. The causes relied upon for a new trial, which are set out in appellants' brief under the heading, "Propositions and Authorities," and not specifically waived, are:

(1). The verdict is not sustained by sufficient evidence.

(2). The verdict is contrary to law.

(3). The damages assessed by the jury are excessive.

(4). The court erred in giving to the jury of its own motion, instructions 12 and 14.

(5). The court erred in giving to the jury at the request of the plaintiff, instruction No. 4 and in giving to the jury plaintiff's instruction No. 2 as modified by the court.

(6). Specifically waived.

(7). The court erred in overruling a motion to strike out part of an answer of a witness to a question.

(8). The court erred in overruling a motion to instruct the jury to disregard the statement of a witness in answer to a question.

(9). The court erred in overruling a motion to disregard the statement of a witness concerning any other trial.

(10). The court erred in overruling the motion of defendants to withdraw the cause from the jury, for reason of constant references by counsel for plaintiff to an $800.00 judgment which he insists he obtained against defendants.

(11). The court erred in the trial of said cause in overruling defendants' motion to withdraw on account of misconduct of counsel for plaintiff.

In considering the sole question as to whether or not the verdict of the jury is sustained by sufficient evidence, we keep in mind the well founded rule of this court that only the evidence most favorable to appellee will be considered. There was evidence submitted by appellee that the driver of the car, in which appellee was riding, before entering the intersection of the streets named in the complaint, stopped his car and looked to see if any one was coming, shifted his gears and passed into the intersection, and that when he passed the center of the intersection, he was struck by the car driven by Charles Helton, and that no warning or signal was given of his approach. There was further evidence that after the impact of appellants' car, the car of appellee was lifted fifty (50) or sixty (60) feet and came in contact with the porch of a residence. The evidence of appellee further discloses that after the accident, appellant Charles Helton stated that he did not know how fast he was driving, that it was a new car and that he had it opened up. The evidence further disclosed that in a conversation with Rolla Helton after the accident, that Rolla Helton said to Edgar V. Mann that he realized the boy was negligent and that he felt sorry for the little girl. The boy was driving his car and he was responsible and he had sent him on an errand and he felt that he, Edgar V. Mann, would be taken care of.

We are of the opinion that this evidence, considered alone, is sufficient to warrant a finding for appellee. The alleged statement of Rolla Helton that he was responsible and that he had sent his son on an errand, was in the nature of an admission of liability from which the jury might infer that the son

was, at the time of the accident, operating the car either as agent of his father or with his knowledge or consent. *Epperson* v. *Rostatter* (1929), 90 Ind. App. 8, 168 N. E. 126.

It is our opinion that from the consideration of the evidence submitted by appellee, the jury was warranted in reaching the conclusion it did so reach and that under the principles of law involved relative to negligence, upon the application of such evidence the verdict of the jury is not contrary to law.

It is next contended that the damages assessed by the jury are excessive. There is evidence establishing the fact that the right collar bone of Doris Eileen Mann was broken; that she had injuries about the face and head which resulted in leaving scars on her face; that she had to wear a brace for two months and that she walks with a stoop and is nervous and temperamental. There was also evidence of pain and suffering. While the amount awarded, $3,400.00, is a substantial sum, the extent of the injuries as a basis for damages was for the jury to determine in the first instance; and in the absence of any improper influence, prejudice, passion, or partiality, this court will not disturb such verdict.

By instruction No. 12 given by the court on its own motion, the jury, among other things, was informed to follow the law as given by the court in the instructions and not as stated by counsel and to take the evidence detailed by the witnesses and shown by the documents introduced instead of statements of counsel. It is contended by appellants that the reference by the court in such instruction to "documents" was erroneous in that it referred to more than one document when, as a matter of fact, only one ex-

hibit was introduced in evidence. We are of the opinion that, considering this instruction alone, there is no merit in this contention even though the "documents" should have been referred to in a singular number rather than plural. But, having in mind the contention of appellants relative to misconduct of counsel for appellee this instruction becomes significant, to which we will refer later herein.

Instruction No. 14, given by the court on its own motion informed the jury relative to the impeachment of witnesses and informed it that if a witness had made statements out of court contrary to and inconsistent with what he or she testified on the trial concerning material matter to the issues and if such witness has been impeached, then it was within the province of the jury to disregard such testimony except as corroborated. It is contended by appellants that this instruction gave emphasis to the statements of the attorney for appellee which were improperly made in the presence of the jury. We do not so consider the effect of this instruction and find no error in the giving thereof.

Instruction No. 4 given by the court on request of plaintiff, informs the jury that in estimating the damages, if any, it could take into consideration every phase of the injury as alleged in the complaint and could consider any future pain and suffering she might endure. Appellant insists that there was no evidence concerning the element of future pain and suffering and consequently such instruction was erroneous. There is evidence tending to show that Doris Eileen Mann, as a result of the accident, is always nervous and that she has headaches all the time. This evidence, we think, would warrant the court in giving this instruction and we find no error by reason thereof.

Instruction No. 2, requested by the plaintiff and given by the court after modifying same, informed the jury relative to negligence. Said instruction contained the following statement:

"Any person that violates a duly enacted statute of the State of Indiana regulating the operation of a motor vehicles is a wrongdoer and is negligent in the eyes of the law and any innocent person injured by such violation of a positive statute regulating the operation of a motor vehicles if it be the proximate cause of the injury, may recover damages from such person or corporation."

It is contended that the element of contributory negligence is omitted therefrom and therefore the instruction is erroneous. It is noted that the instruction contains the words, ". . . innocent persons injured by such violation . . . ." Certainly if the person referred to in the instruction was guilty of contributory negligence, he would not be an innocent person and would be excluded from recovery and we think the instruction so states, and the jury so understood.

Upon the cross-examination of the witness of Edgar V. Mann, appellant propounded the following question:

"Q.  You knew that there would be questions as to distances and places where this (the accident) occurred, did you not?
"A.  There wasn't in the other case."

Appellant moved to strike out the answer, which motion was sustained by the court, and the court thereupon instructed the witness as follows:

(Court) "Answer yes or no and explain your answer."

Thereupon the witness made the following answer:

"A. No, because there wasn't any question that came up when the case came up in Cox's court."

Thereupon appellant moved to strike out all of the answer after the word "no," which motion was overruled by the court. Appellant then moved the court to instruct the jury to disregard the statement of the witness, which motion was overruled by the court, and appellant then moved the court to instruct the jury to disregard whatever this witness says concerning any other trial for the reason that the cross-examination is not concerning any other trial and does not open the door. This motion was by the court overruled.

We see no reason for the court to instruct the witness to answer the question yes or no and explain his answer. The statement by the court contemplated and requested an answer of yes or no, and the question being so answered, there would be nothing equivocal in the answer which required any explanation. However, we cannot see how appellant would be harmed by the answer made thereto. The mere reference by a witness to the fact that a cause had been in court before would not prejudice the rights of either party; and we are of the opinion that, while the question was not a proper one, no reversible error was committed by the court in overruling the motion to strike out part of the answer, having in mind that the court did, subsequently, in ruling upon a motion to withdraw the case from the jury, instruct it to disregard any reference to any other trial.

In the further recross-examination of the witness Edgar V. Mann, the following questions were propounded to the witness:

"Q. What other conversation was there?
"A. The son was present with his mother and

Mr. Rolla Helton in the conversation that took place in front of the treasurer's office.

"Q. When was that?

"A. After the case where I got an $800.00 judgment."

Appellant thereupon moved the court to withdraw the case from the jury because of constant reference by appellee's attorney to the $800.00 judgment which he insisted he obtained against these people and this fact is mentioned solely for the purpose of prejudicing the jury herein. The court overruled this motion but instructed the jury immediately as follows:

(The court) "You are instructed to disregard any evidence which is not in response to the question and any reference to any other trial."

We think the action of the trial court in instructing the jury relative to any other case was sufficient to counteract any harmful effect, if any there was, by this answer.

It is earnestly contended by appellants in their brief and in the oral argument that counsel for appellee was guilty of misconduct. This alleged misconduct occurred during the *voir dire* examination of the jury, in the trial of the cause, and in the argument thereof. It appears by the record that counsel for appellant asked the jury collectively on *voir dire* examination whether or not it had any interest in the Grower's Automobile Insurance Association. After the jury was sworn, a short recess of court was had and the jury was excused from the courtroom. Upon the return of the jury to the courtroom, counsel for appellee laid upon his table the outside cover of an insurance policy, upon which cover appeared the following:

"No. 4120 Grower's Automobile Insurance Association, issued to Rolla Helton. Local agent, E. W. Hohlt."

Said cover was placed about 4 feet from the jury, and in such a manner that it was visible from the jury box and appeared right side up to the jury. Said counsel also placed on his table an insurance policy issued by the Grower's Automobile Insurance Association to Rolla Helton in the same manner as the cover thereon. The name of Grower's Automobile Insurance Association was composed of letters approximately one-fourth (¼) inch in height. Thereafter, said counsel held said insurance policy in his hand above the table in full view of the jury and the same was then laid on the table unobscured.

In his closing argument to the jury, counsel for appellee made the statement that since the defendants were working men, he would never get out an execution against them, if a judgment were obtained in this case, but that the judgment would be paid and that there were matters involved in this case which he was not permitted to explain to the jury, but which it would find out afterwards.

The inquiry addressed to the jury relative to its interest in the Grower's Automobile Insurance Association was proper and appellee was entitled to have such information from the jury. *Inland Steel Co.* v. *Gillespie* (1914), 181 Ind. 633, 104 N. E. 76; *Beyer* v. *Safron* (1926), 84 Ind. App. 512, 151 N. E. 620; *Kraning* v. *Bloxon, Admx.* (1937), 103 Ind. App. 660, 5 N. E. (2d) 649.

"In the administration of justice it is of prime importance that litigants should have implicit confidence in the integrity and impartiality of courts and juries. In order to maintain this confidence courts can not be too strict in guarding trials by jury from improper influence. It should be an inflexible rule of law that no party to a suit can profit by his own misconduct." *Pitts-*

*burgh, Cincinnati, Chicago and St. Louis Ry. Co.*
v. *Welch* (1895), 12 Ind. App. 433, 436, 40 N. E.
650.

The fact that insurance was carried by appellants, or either of them, was not a proper matter to go to the jury. Appellants were the sole defendants, and the fact that they or either of them, were or were not insured was not at issue and should not be considered by the jury in arriving at a verdict.

The policy of insurance in possession of counsel for appellee was the property of appellant. It was not admissible as evidence and the only conceivable reason or purpose of counsel in having such policy in the courtroom was to get to the jury the fact that an insurance company was liable for any judgment rendered.

We cannot state from the record whether the jury did or did not see this policy, yet, having in mind the size of the document and the letters printed thereon, and considering the statement of counsel in his closing argument that he would not get out an execution, if a judgment were obtained, but that the judgment would be paid, and the inadvertent instruction by the court relative to "documents," we conclude that the jury did see such policy and was influenced by the statement of the counsel in his closing argument.

The evidence of appellants tends to show that Charles Helton was not an agent of his father, Rolla R. Helton, and that Rolla R. Helton had not made the statements attributed to him by the testimony of Edgar V. Mann. They, or either of them, had the right to go to the jury on the issues herein, free from the chance of such issues being lightly considered by the jury because they might believe he or they were protected by insurance.

We think this case comes within the rule established in Annotations in 56 A. L. R. 1485, which reads as follows:

"There is no hard and fast rule that requires a court to penalize the plaintiff by directing a mistrial because evidence that the defendant is protected by indemnity insurance is competent for the jury. However, if the plaintiff gets this matter into the case by questionable practice, the court upon proper application should penalize him by directing a mistrial. And if he deliberately sets out, though in an indirect way, to inform the jury by improper evidence or arguments that the loss, if any, will fall upon an insurance company, his conduct is deemed so prejudicial as to warrant a reversal of the judgment, if for the plaintiff, and the granting of a new trial; at least, where the evidence is conflicting, and the case is a close one on its facts."

We are convinced that by the misconduct of counsel for appellee, appellants were prevented from having a fair and impartial trial of their rights herein and the judgment is reversed with instructions to the trial court to sustain appellants' motion for a new trial.

NOTE.—Reported in 40 N. E. (2d) 395.